[Civ. No. 3792. First Appellate District, Division One.—July 14, 1921.]

CLORINDA NOCE et al., Respondents, v. UNITED RAILROADS OF SAN FRANCISCO (a Corporation), Appellant.

[1] NEGLIGENCE—DEATH OF MOTOR-TRUCK DRIVER—COLLISION WITH RUNAWAY CAR—EVIDENCE—LIABILITY OF DEFENDANT.—Where in an action for damages for the death of the driver of a motor-truck which was caused by a runaway electric street-car crashing into the rear of his truck, it fairly appears from the evidence that a collision between the car and another truck, which caused the car to become uncontrollable, was the result of the negligence of the motorman or of the concurrent negligence of both the motorman and the driver of the first truck, the street-car company is liable for the death provided the driver of the second truck was himself free from negligence proximately contributing to the collision which caused it.

[2] ID.—CONTRIBUTORY NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.—In an action for damages for the death of the driver of a motor-truck as the result of a collision between a runaway electric car and the truck, it cannot be said as a matter of law that the

driver was guilty of contributory negligence in driving on the track without looking or listening to ascertain whether a car was approaching, where the evidence was conflicting as to whether the deceased had driven suddenly on the track or had been driving thereon for some time before the collision.

[3] ID.—Driving on Street-car Track—Watch for Approaching Car.—One driving on or near the track of a street-car on a public highway does not show a lack of ordinary care nor is he guilty of negligence *per se* in failing to keep a constant watch behind for an approaching car.

[4] Motor Vehicle Act—Signal on Changing Course—Construction.—A practical and reasonable construction of subdivision "n" of section 20 of the Motor Vehicle Act (Stats. 1919, p. 216), providing for the giving of signals on changing courses, does not require the driver of a vehicle upon every deviation from a direct course ahead to look back to ascertain the condition of traffic behind him, such situation being covered by his duty to use ordinary care.

[5] Negligence—Instruction — Deprivation of Defense—Reversal of Judgment.—In this action for damages for death, an instruction that if the jury found the deceased to have been negligent in a given particular it could only find for the defendant in the event that the latter was free from negligence, was, in the state of the evidence, practically equivalent to directing a verdict for the plaintiff, and sufficiently prejudicial to require a reversal, notwithstanding that in another part of the charge the court instructed the jury as to the effect of negligence on the part of the deceased.

[6] ID. — Contradictory Instructions—Reversal of Judgment.— Where two instructions are contradictory in essential parts, the judgment must be reversed.

APPEAL from a judgment of the Superior Court of San Mateo County. George H. Buck, Judge. Reversed.

The facts are stated in the opinion of the court.

Wm. M. Abbott, Wm. M. Cannon, K. W. Cannon, Ivores R. Dains and Hall C. Ross for Appellant.

Percy V. Long, Louis Ferrari, Walter Drobisch and A. P. Black for Respondents.

KERRIGAN, J.—This is an appeal by the defendant from a judgment in favor of the plaintiffs, the widow and minor

children of one David Noce, in an action for damages aris-
ing from the latter's death, alleged to have been caused by
the negligence of defendant.

The case was tried by a jury which rendered a verdict in
the plaintiff's favor for fifty thousand dollars, but upon
motion for a new trial the court made an order granting
the motion unless the plaintiffs would consent to a reduction
of the verdict and judgment to twenty-five thousand dollars.
The plaintiffs consented, and the judgment now appealed
from is for the sum of twenty-five thousand dollars.

On the twenty-second day of July, 1919, a south-bound
electric car of the defendant left Daly City on schedule
time at 1:50 P. M. and had proceeded but a short distance
when it collided with a motor-truck belonging to one A. G.
Witt. This truck was on the right-hand car track and run-
ning at the rate of about twenty miles an hour. The car
at the time of said collision was running down grade at the
rate of about forty miles an hour. According to the evi-
dence of a number of witnesses called by the plaintiffs the
motorman gave no warning of his approach, and his car
crashed into the rear of the motor-truck, hurling it into an
adjoining field, the vestibule of the car being smashed and
the motorman thrown to the floor unconscious; the air-brake
equipment and the entire front control were destroyed. In
this condition, and with the motorman unconscious, the car
continued on its course at a high and dangerous rate of
speed, the track at this point being down grade; and while
so proceeding uncontrolled it collided with a truck operated
by David Noce, causing his death. This truck was also, ac-
cording to plaintiffs' evidence, on the right-hand car track
proceeding in a southerly direction. Of course no gong or
bell was sounded as the car approached the second truck;
and while it is conceded that the electric car at this time was
running at the rate of at least sixty miles an hour, witnesses
for the plaintiff stated that it made no unusual noise. It
is also conceded that the Witt truck was being operated in
violation of a provision of the Motor Vehicle Act of 1919,
[Stats. 1919, p. 191], in that it was so loaded as to obstruct
a view to the rear and was not equipped with a mirror by
which such a view could have been had by its driver.

[1] From the evidence in the case we think it fairly
appears that the first collision was the result of the negli-

gence of the motorman driving the defendant's electric car, or of the concurrent negligence of both such motorman and the driver of the Witt truck. Consequently in either event the defendant would be liable for the death of Noce provided Noce himself was free from negligence proximately contributing to the collision which caused it.

The defendant claims that the judgment in favor of the plaintiffs cannot stand, for the reason that the evidence shows that the deceased was in fact guilty of such contributory negligence, (1) in operating and driving his motor-truck when the same was so loaded as to obscure his view of the highway to the rear without equipping his truck with a mirror so as to reflect a view of the highway; (2) in driving upon the track in front of this runaway car without looking or listening to ascertain whether a car was approaching or taking the slightest precaution for his own safety.

As to the first of these contentions it is true that a provision of the Motor Vehicle Act which went into effect the day before this accident occurred requires that a person operating a vehicle so covered, loaded, or constructed as to obscure the driver's rear view should have such vehicle equipped with a mirror so as to reflect a view of the highway for at least two hundred feet to the rear; and it is the defendant's contention in this behalf that the omission of the deceased at the time of the collision to comply with this provision of the law rendered him guilty of contributory negligence. This contention, it appears, is not sustained by the evidence, which fails to reveal that the Noce truck was so loaded or constructed as to obscure the rearward view of the highway.

[2] As to the other of these contentions, it is true that according to the evidence introduced by the defendant the deceased was driving his truck on the right-hand side of the car track, and that in order to pass two motor-trucks which were standing within about four feet of said track the deceased, without looking back to learn the conditions rearward, turned upon the track just in time, unfortunately, to be struck by the runaway car. On the other hand, according to the evidence introduced by the plaintiff, the deceased did not drive suddenly upon said track but had been upon it for some time when the collision occurred. Under these circumstances we cannot say as a matter of law that

the deceased was guilty of contributory negligence. The question, it is clear, was one for the consideration of the jury. The defendant had no exclusive right to that portion of the road occupied by its tracks, and in fact it makes no such contention. **[3]** Nor can it be held that one driving on or near the track of a street-car on a public highway shows a lack of ordinary care or is guilty of negligence *per se* in failing to keep a constant watch behind for an approaching car. (*O'Connor v. United Railways,* 168 Cal. 43, 49, [141 Pac. 809].)

The court in effect instructed the jury in part as follows: "If Noce violated the Motor Vehicle Act in driving a truck so constructed or loaded as to obstruct his rear view, without mirror equipment, he was guilty of negligence, and if such negligence proximately contributed to his injury and death, *and the defendant was without negligence,* your verdict must be for the defendant.

"The court instructs you that it is the law of this state that 'the person in charge of any vehicle in or upon any public highway, before turning, stopping or changing the course of such vehicle, and before turning such vehicle when starting the same, shall see first that there is sufficient space for such movement to be made in safety,' and therefore if you find from the evidence in this case that David Noce was operating a motor vehicle and truck along the westerly or right-hand side of the highway and clear of the tracks of the defendant, and did thereafter turn or change the course of such truck so as to go upon the track of the defendant, and failed before turning such truck to see first whether there was sufficient space for such movement to be made in safety, then I instruct you that said David Noce was guilty of negligence in so operating and turning said truck, and that if such negligence proximately contributed to his injury and death, your verdict should be for the defendant United Railroads, *unless you find the injury could have been avoided by ordinary care of the defendant.*

"If you find that Noce failed to exercise ordinary care and in consequence thereof received injuries resulting in his death, he was guilty of contributory negligence and your verdict must be in favor of the defendant *unless you find the injury could have been avoided by ordinary care of the defendant."*

These instructions, without the italicized portions thereof, were requested by the defendant, and the defendant contends that in giving them as thus modified the court committed prejudicial error. It is true that the court elsewhere in its charge correctly instructed the jury on the subject of contributory negligence.

It may be doubted whether the defendant was entitled to the first two of these instructions as proposed. As to the first of them, as before stated, there is no evidence in the record that the truck of the deceased was so constructed or loaded as to obscure the driver's rearward view. As to the second of them, its offer by the defendant was based upon the theory that the deceased, when he, upon arriving in the vicinity of the standing trucks, deflected his course a little to the left so as to bring his vehicle upon the car track, thus changed his course within the meaning of subdivision "n" of section 20 of the Motor Vehicle Act (Stats. 1919, p. 216), reading as follows: "The person in charge of any vehicle in or upon any public highway, before turning, stopping or changing the course of such vehicle . . . shall see first that there is sufficient space for such movement to be made in safety, and if the movement or operation of other vehicles may reasonably be affected by such turning, stopping or changing of course, shall give plainly visible signal to the persons operating, driving or in charge of such vehicles of his intention so to turn, stop or change his course, either by the use of his hand or arm, or by the use of an approved mechanical or electrical device . . . "

[4] We think a practical and reasonable construction of this provision would not require the driver of a vehicle upon every deviation from a direct course ahead to look back to ascertain the condition of traffic behind him. This particular situation would be covered by his duty to use ordinary care, and whether or not he did so would be for the jury to decide upon the particular circumstances of the case. [5] Had the court contented itself with simply refusing to give these two instructions we perhaps would find no ground for the reversal of the judgment based upon such refusal; but we think it clear that by giving them with the additions indicated by italics it completely deprived the defendant of its defense of contributory negligence on the part of the deceased. This also is unquestionably the case

as to the court's modification of the third of said instructions. The effect of this reiteration of the proposition that if the jury found the deceased to have been negligent in a given particular it could only find for the defendant in the event that the latter was free from negligence, was, in the state of the evidence in the case, practically equivalent to directing a verdict for the plaintiff, and certainly deprived the defendant of its defense of contributory negligence on the part of the deceased. If the record contained no evidence of negligence on the part of the deceased which proximately contributed to the collision, the defendant could not be said to have been injured by the modification of its proposed instruction referred to, but such is not the case. There was undoubtedly evidence before the jury from which it could have concluded that the deceased was not free from fault. The fact that in another part of its charge the court instructed the jury as to the effect of negligence on the part of the deceased simply makes the instructions as a whole irreconcilable, leaving the jury to follow one or the other as its sympathies might dictate. This being so, we are of the opinion that the contention of the defendant that these instructions as thus modified were incorrect and seriously prejudicial to its defense must be sustained.

If it be suggested that the modification of the second and third of these instructions was for the purpose of instructing the jury upon the application to the case of the doctrine of last clear chance, the answer is that there was obviously no room for the application of that doctrine, since the undisputed evidence showed that the car which collided with the wagon of the deceased was one over which the defendant had completely lost control prior to the time when the deceased had come into a position of danger. Nor is there anything in the language of the modification which even remotely suggests to a body of laymen that it was meant for that purpose. From the uniformity with which the trial court introduced the modification of these instructions offered by the defendant it seems clear that at the moment of giving them the court had an erroneous view of what constitutes contributory negligence. In any event the conclusion is inescapable that as a result of the instructions the jury must have had a very confused notion on that, to the defendant, vitally important matter. The instructions are

contradictory and confusing, and cannot be reconciled. In the case of *Guthrie* v. *Carney,* 19 Cal. App. 145, 155, [124 Pac. 1045], as here, the charge of the court was contradictory and inconsistent in the application of the law to the vital issues of the case, and it was held that as it was impossible to determine which of the trial court's views of the law the jury adopted as the basis of their verdict, the error of the court must be deemed to have been prejudicial. **[6]** Where two instructions are contradictory in essential parts, the judgment must be reversed. (*Hayden* v. *Constantinople Mining & Dredging Co.,* 3 Cal. App. 136, [84 Pac. 422].) See, also, *People* v. *Ross,* 19 Cal. App. 469, [126 Pac. 375].

It follows that the judgment must be reversed and the cause remanded for a new trial. It is so ordered.

Waste, P. J., and Richards, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 12, 1921, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 12, 1921.

All the Justices concurred, except Lawlor, J., who dissented from an order denying a hearing and filed the following opinion:

LAWLOR, J., Dissenting.—I dissent from the order denying the application for a hearing in this court.

It is plain from the record on appeal that the modifications complained of did not have the effect of taking from the jury the issue of contributory negligence, or of preventing them from passing on the merits of that defense. Instructions on contributory negligence had already been repeatedly given. Among such instructions were these: One that the jury must find that the second collision occurred "without any negligence on the part of said Noce," before a verdict could be rendered for plaintiff and against defendant. The substance of this was repeated in the succeeding instruction. The jury was told in another they must find that the death of Noce was caused by the negligence of the defendant and "without fault" on his part before they

could find for plaintiff. In another the charge was given
that it was the duty of the motorman to save Noce from in-
jury, and that it was his duty to exercise ordinary care to
save himself from injury—that the duty was reciprocal. In
another it was declared that "contributory negligence is
such an act or omission on the part of David Noce, deceased,
amounting to a want of ordinary care as concurring or co-
operating with the alleged negligent act of the defendant,
proximately contributed to the injuries resulting in his death.
The court instructs you that the basis for the rule of con-
tributory negligence is that the party whose negligence
proximately contributed to his injury must bear the harm
which he brings on himself and which he might have avoided
by reasonable care for his own self-preservation." In an-
other the jury was charged that "the tracks of a street rail-
way company are in themselves a sign of danger, and one
who approaches same must exercise his faculties of sight
and hearing to wait and listen for cars, and his failure to
so act is negligence." In another the jury was instructed
that if Noce was not exercising ordinary care and prudence
for his own safety, and such failure on his part continued
up to the moment of the accident and proximately con-
tributed to the injuries resulting in his death, the verdict
must be for the defendant, and that even if they find that the
motorman was guilty of negligence, nevertheless if they find
that Noce also was guilty of negligence and such negligence
contributed to the injuries which resulted in his death, the
verdict must be for the defendant. In another it was stated
that if the jury found Noce could, by the exercise of ordi-
nary care, have seen the car approaching, and have avoided
the collision, and his death resulted from a failure to exer-
cise such care, he was guilty of contributory negligence
and the verdict must be for the defendant. And in still
another it was declared to be the duty of Noce to make
reasonable use of his faculties of sight and hearing to watch
and listen for approaching cars, and that it was his duty
to use ordinary care for any car that might be approaching
from the rear, and, if known to him, to seasonably leave the
track in order to permit any such car to pass.

It is to be kept in mind that the modified instructions
themselves are addressed to the defense of contributory
negligence. In view of the evidence, the contentions of the

parties, and the elaborate character of the preceding instructions on that subject, the jury could not fail to understand that if Noce contributed to his own death the verdict must be for the defendant. I find no warrant for the conclusion that defendant's rights were prejudiced by the modifications. It would be more in harmony with the charge as a whole to conclude that if the modifications carried any particular meaning to the jury it was that the court was only repeating to them what it had already declared in varying phrases in a number of instructions—that if the motorman's negligence was the proximate cause of the injury and plaintiff did not contribute thereto, defendant would be liable.

The reversal of the judgment rests upon the single proposition that the jury understood, or might have understood, the legal distinction, and thereby became confused, between the instructions first given on the subject—which declared that if the motorman's negligence was the proximate cause of the accident and plaintiff was free from contributory negligence, defendant would be liable, and the modifications that plaintiff's contributory negligence would bar his recovery unless the defendant "was without negligence," or unless "you find the injury could have been avoided by ordinary care of defendant"—the latter being repeated in the third instruction. Of course, the distinction is plain to the trained legal mind, but I do not believe that substantial justice can be done on appeal if verdicts are to be set aside upon any such ground. Considered in its entirety, the charge was more than fair to the defendant; indeed, it may with truth be said that it was more favorable to that side of the case. This decision is in the face of section 475 of the Code of Civil Procedure and section 4½ of article VI of the constitution, for to hold that but for the error in the instructions a different result would have been probable, or that it resulted in a miscarriage of justice, is in effect to declare that if the judge, in the course of an elaborate charge, inadvertently happens to make a single error, the judgment must be set aside and the case tried over again, with the attendant delay and expense. It is against every reasonable probability that the jury noticed the contradictory statements in the charge, and, therefore, under the rules of decision on appeal, the error should have been held harmless.

It is not enough that the jury *might* have been misled; the appellate court must be of the opinion after an examination of the entire record that such was the result of the error or the judgment must be affirmed. It is entirely problematical whether the jury detected the contradictions in the instructions, and how, then, can it be said in the presence of overwhelming proof of negligence on the part of defendant's servants that the misdirection resulted in a miscarriage of justice? Moreover, the failure of the district court of appeal to weigh the error under the constitutional rule of decision on appeal alone furnishes sufficient ground for granting the petition.

In the next place, it is far from clear that the evidence would support a finding of contributory negligence, and if this be so, the giving of instructions on that subject, even if erroneous, would not, of course, be prejudicial. Before the first collision occurred the car was traveling at the rate of over sixty miles an hour, and after that, according to the opinion, it slowed down to forty-five miles an hour. There is testimony that Noce had been on the track for some time prior to the first collision. Besides, it is extremely doubtful whether the jury accepted defendant's theory that Noce turned sharply to go upon the track, and there is ample ground for an assumption that the jury believed he looked in the direction from which the car came before making the turn. It is plain from the evidence that once on the track, he had no chance to escape. The required warnings were not given by the employees of defendant; the car continued at break-neck speed even after the first collision; and the impact was so great as to render the motorman unconscious. As indicating the high speed at which the car was traveling, the truck was carried 150 feet after it was struck, and it was impossible to stop the car before it had gone 2,000 feet. In short, the servants of defendant showed so flagrant a want of care in the operation of the car that the jury must have decided from the evidence that it was the proximate cause of the injury and that plaintiff was free from contributory negligence.

This is not a case where the evidence on the issues of defendant's negligence is evenly balanced or open to doubt. The gross negligence of defendant's servants is conceded,

and by the decision the negligence of defendant has become the law of the case. Between the evidence of gross negligence on the one hand, and the doubtful claim of error on the other, it is our duty to grant the petition.